UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-20256-Civ-COHN
    (07-20994-Cr-COHN)
MAGISTRATE JUDGE P. A. WHITE

JORGE MUENTES,                :

        Movant,               :

v.                            :                    REPORT OF
                                            MAGISTRATE JUDGE
UNITED STATES OF AMERICA,:

        Respondent.           :

_____

## I    INTRODUCTION

This Cause is before the Court upon Movant Jorge Muentes' pro se motion to vacate, filed pursuant to 28 U.S.C. §2255 (Cv:DE1). The motion attacks his convictions and sentences imposed in Case 07-20994-Cr-COHN, after a trial by jury, at which he was found guilty on two counts: Count 1, knowingly attempting to induce a minor to engage in a commercial sex act, in violation of 18 U.S.C. §2422(b); and Count 2, knowingly attempting to travel in interstate and foreign commerce to engage in illicit sexual conduct, in violation of 18 U.S.C. §§2423(e) and (b). As to Count 1 Muentes was sentenced to 120 months' imprisonment, followed by 5 years of supervised release; and as to Count 2 he was sentenced to a 78 month prison term, followed by a 5-year period of supervised release.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2255 Cases in the United States District Courts.

The Court has available for its consideration: the Movant's pro se §2255 motion (Cv:DE1) and Brief (Cv:DE5); the government's Response to Order to Show Cause (Cv:DE12); Movant's Traverse (CV:DE13); Movant's "Declaration" (Cv:DE15); the PSI, an addendum thereto, and the Court's SOR; and relevant portions of the record from the underlying criminal case, and from Movant's direct appeal.

In his motion, Muentes raises the following grounds/claims:

1.  Counsel was ineffective during the pretrial and trial process when he failed to consult with an expert to determine if one or more tape recordings had been altered, and/or whether government transcripts portrayed the actual conversations between Muentes and an undercover agent.

2.  Counsel was ineffective at trial when he failed to file a motion for judgment of acquittal based on the defense of entrapment.

3.  Appellate counsel was ineffective for failing to argue that the 10-year minimum mandatory sentence under 18 U.S.C. §2422(b) was unconstitutional as applied to Muentes' case.

4.  Movant Muentes' plea of not guilty, and his conviction and sentence are violative of the Sixth Amendment because Muentes asserts that trial counsel failed to convey a plea offer, which, if accepted, would have resulted in a 60 month sentence rather than the 120 month sentence imposed after trial.

5.  Movant Muentes' conviction and/or sentence violates the Sixth Amendment, in light of the cumulative effect of multiple errors committed by counsel representing him in the pretrial, trial, and appellate phases of his case.

    a.  His attorney did not advise him as to all facts and the law relevant to a decision to plead not guilty and to proceed to trial; and if counsel had pursued a favorable plea agreement, Muentes would have plead guilty rather than going to trial. [See Cv:DE1, pp.20-21, ¶63]

    b.  His attorney should have moved to suppress evidence, and failed to move to dismiss the indictment. [Id. p.21, ¶64]

    c.  His trial attorney failed to investigate and present exculpatory evidence and testimony, and failed to object to unlawful admission of evidence against him. [Id. ¶65]

    d.  His trial attorney failed to timely request appropriate jury instructions, did not object to insufficient jury instructions; and failed to object to [unspecified] improper argument by the prosecution, and to request curative instructions.[Id. ¶66]
    e.  His attorney was ineffective at sentencing, for failing to

2

object to false and unreliable evidence used to determine Muentes' guidelines sentencing range. [<u>Id.</u> ¶67]

    f.    His appellate attorney was ineffective for failing to present the strongest issues available for appeal, and for failing to preserve viable issues for collateral review. [<u>See</u> Cv:DE1, p.22, ¶68]

    g.    His trial and appellate attorneys were laboring under actual conflict(s) of interest, which adversely affected their performance at all stages of his case. [<u>Id.</u> ¶69]

6.    Movant Muentes' conviction and sentence are violative of his Right To Freedom Of Speech And To Petition, His Right To Be Free From Unreasonable Search And Seizure, His Right To Due Process Of Law; And His Rights To Counsel, To Jury Trial, To Confrontation Of Witnesses, To Present A Defense, And To Compulsory Process, And His Right To Be Free From Cruel And Unusual Punishment Under The Constitution.

As indicated in the Eleventh Circuit's 3/2/2009 opinion [USCA #08-13321] affirming Muentes' convictions and sentences, issued as Mandate on 3/31/2009 [Cr:DE101], as stated in the PSI [¶¶4-11, captioned "Offense Conduct"], and as reflected in the transcript of trial testimony in his case, the charges against Muentes and his convictions thereon stemmed from his contacts with undercover agents to arrange travel to Costa Rica for the purpose of having sex with 14 to 16 year old prostitutes.

In brief, the record shows that Muentes telephoned Latin America Pleasure Tours ("LAPT") which had placed an advertisement for services in an adult magazine. Muentes did not know that LAPT was an undercover operation run by federal agents. He left a phone message with his name and number. Investigation showed that the phone number given by Muentes was assigned to him; agents obtained records revealing that he had a Florida Driver's license, and revealing his birth date and social security number. Agents also verified that Muentes had a "bellsouth.net" e-mail account that he used as part of his attempt to obtain a sex companion in Costa Rica.

The record reflects that, between 9/27/2007 and 11/15/2007, calls initiated by and made to Muentes were recorded. During these he asked that LAPT arrange a travel package for him to Costa Rica. His request included that he be provided air travel, hotel accommodations, and a minor, female escort in Costa Rica. The UC agent prepared an itinerary and sent it by e-mail to Muentes, explaining that the cost of a 14-16 year old escort was $1,150.00 for 24 hours of services which could be divided up in any manner that Muentes preferred. The cost of the hotel [4 days and 3 nights], airfare, and meals was an additional $1,100.00. Muentes responded by e-mail, saying it was "a great deal," and asking various questions including whether he could have a series of different girls for 1 hour at a time ["ideally 24-1hr. girls"], and inquiring about tips, and other miscellaneous charges at the hotel such as for liquor and room service. The agent responded that the hotel and airfare had to be paid in advance; and that $575.00 for one half of the $1,150.00 cost for the escort(s) had to be paid in advance. For these items, Muentes paid a total of $1,675.00.

By phone, on 9/27/2007, the UC agent told Muentes that there were escorts between 14 and 27 years of age; Muentes asked if a 14 year old escort was legal, and the agent responded "none of what we're doing is legal," and said that he [the agent] was "kinda like a pimp you know." As the conversation continued, Muentes indicated to the agent, "...as far as the age is concerned, let's go young," the agent said he couldn't hear clearly what Muentes had said, and Muentes said "Let's go young, you know very young...which ever age group is that." The agent asked "Like what do you want fourteen (14) sixteen (16)?"...and Muentes responded, "Yeah that's fine." The agent asked... "Or did you want the uh..twenty (20) you twenty to twenty-five (25) to twenty-seven (27)?" Muentes responded, "No, fourteen (14), sixteen (16) is good." Costs and other details were discussed. Muentes was told that, in Costa Rica, he was to meet a man named Jorge, who was to show him books with pictures of available escorts, depicting both adult escorts and escorts who were

minors. The escort to be chosen by Muentes was be taken to meet him at the El Presidente Hotel in San Jose.

During a conversation on 10/5/2007, Muentes asked the UC agent to have Jorge also bring pictures of escorts between the ages of 21 and 24, "just in case; the UC agent then asked Muentes if he was interested in  a minor, and Muentes reiterated that he was still interested in a minor escort. During that phone call Muentes made the partial payment of $575.00 for the airfare, hotel, and a minor escort, by providing a Visa credit card number issued in his name.

On 10/9/2007 Muentes called the number for LAPT and left a phone message asking for assurance that he was not going to be "busted or something." The UC detective returned Muentes' call, Muentes said he was "interested in, uh, legal stuff," and wanted to know that he wasn't going to get arrested, like happens on televison when a "guy shows up at the house and it's like someone's recording there's the cops and all that stuff." The UC detective responded that he had "safeguards in place," and didn't keep records of the travel agency transactions. On 11/8/2007, Muentes contacted the UC agent to discuss payment of the balance for the escort services.

On 11/15/2007, Muentes went to the Miami International Airport, and after handing the gate agent his boarding pass for American Airlines Flight #971 to San Jose, Costa Rica, he was arrested. In his bag were: a letter of introduction e-mailed to Muentes from the UC agent, which Muentes was to present to Jorge in Costa Rica, copies of e-mails between the UC agent and Muentes, Muentes' U.S. Passport, and $1,553.00 in cash.

As noted, Muentes was convicted by a jury of the §2422(b) violation [Count 1, attempt to induce a minor to engage in a commercial sex act] and the violation under §§2423(b) and (e) [Count 2, attempt to travel in interstate and foreign commerce to engage in an illicit sex act], for both of which the applicable guideline

section is USSG §2G1.3.  Since the offense involved the same victim
and 2 or more acts or transactions connected by a common criminal
objective or constituting part of a common scheme or plan, then, as
provided under USSG §3D1.2(b), the two counts were to be grouped
together for purposes of the Offense Level computation. Pursuant to
USSG §3D1.3(a), when counts are grouped together under §3D1.2(b),
the Offense Level applicable to the Group is the Offense Level for
the more serious of the Counts comprising the Group.  In Muentes'
case, Count 1 [for a violation of 18 U.S.C. §2422(b)] was the more
serious offense, and produced the highest offense level. As provided
under USSG §2G1.3(3), because Muentes was convicted under 18 U.S.C.
§§2422(b), his Base Offense Level was fixed under the guidelines at
28. In Muentes' case, as reflected in the PSI, there were no adjust-
ments or enhancements that increased or decreased the Base Offense
Level, and thus his Total Offense Level was 28.  Muentes had 0 crim-
inal history points, and he had a Criminal History Category of I.

      For purposes of sentencing, for a conviction on Count 1, Title
18 U.S.C. provides under §2422(b) that the defendant "shall be fined
under this title and imprisoned not less than 10 years or for life."
Thus, conviction on Count 1 carried a statutory minimum mandatory
sentence of 10 years imprisonment.  As for Count 2, Title 18 U.S.C.
§§2423(b) and (e) provide that an individual convicted under those
subsections "shall be fined under this title and imprisoned not more
than 30 years, or both.").  Accordingly, for Count 2 there was no
minimum mandatory, and the statutory range of sentencing was for a
term of imprisonment of between 0 and 30 years.

      Where Muentes' Total Offense Level was 28, and his Criminal
History Category was I, his advisory sentencing guidelines range was
78-97 months, based on the Sentencing Table published at Chapter
Five - Part A of the 2007 USSG Manual.

      As noted, at sentencing, where the 10-year Statutory Minimum
Mandatory for Count 1 was greater than the guidelines range of 78-97

months, the Court sentenced Muentes to the minimum mandatory term of 10 years' imprisonment (120 months).  As for Count 2, the Court sentenced Muentes a the low end of the 78-97 month guidelines range, and imposed a 78 month term of imprisonment.

## II  DISCUSSION

### Standard of Review

Movant Muentes' claims of ineffective assistance are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1994), which is not a favorable standard to the movant. See Massaro v. United States, 538 U.S. 500, 505 (2003).  To prevail, a movant must demonstrate both that (1) counsel's performance was deficient, meaning that it fell below an objective standard of rea- sonableness; and (2) the deficient performance prejudiced the defen- dant. Chandler v. United States, 218 F.3d 1305, 1312-13 (11 Cir. 2000)(en banc), cert. denied, 531 U.S. 1204 (2001); Strickland, supra. A habeas court's review of a claim under the Strickland stan- dard is "doubly deferential." Knowles v. Mirzayance, __U.S.__,__129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009). In deciding whether coun- sel's performance was deficient, judicial scrutiny is "highly defer- ential" and requires us to "'indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all sig- nificant decisions in the exercise of reasonable professional judg- ment.'" Id. at 1314 (quoting Strickland, supra, 466 U.S. at 689-90.

Counsel has no duty to raise defenses which have little or no chance of success. Knowles, supra, 129 S.Ct. at 1422 (the law does not require counsel to raise every available non-frivolous defense). See generally, Chandler v. Moore, 240 F.3d 907, 917 (11 Cir. 2001) (counsel is not ineffective for failing to raise non-meritorious objection); Card v. Dugger, 911 F.2d 1494, 1520 (11 Cir. 1990) (holding that appellate counsel is not required to raise meritless issues); Matire v. Wainwright, 811 F.2d 1430 (11 Cir. 1987) (same). Bare, conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by af-

7

fidavits or other indicia of reliability, are insufficient to re-
quire a hearing or further consideration. <u>United States v. Robinson</u>,
64 F.3d 403, 405 (8 Cir.1995), <u>Ferguson v. United States</u>, 699 F.2d
1071 (11 Cir. 1983), <u>United States v. Ammirato</u>, 670 F.2d 552 (5
Cir.1982); <u>United States v. Sanderson</u>, 595 F.2d 1021 (5 Cir.1979).

### **Ground 1**

In ground 1, Muentes argues that his trial attorney was
ineffective for not consulting an expert to determine if tape
recordings made by the government had been altered, and/or whether
government transcripts portrayed the actual conversations between
Muentes and the UC agent. This claim fails for several reasons.

First of all, a claim of ineffective assistance of counsel
based on failure to call an expert requires "evidence of what a
scientific expert would have stated" at trial in order to establish
prejudice required under <u>Strickland</u>. <u>Rodela-Aquilar v. U.S.</u> 596,
F.3d 457, 462 (8 Cir. 2010); <u>Day v. Quarterman</u>, 566 F.3d 527, 538
(5 Cir. 2009)(to prevail on claim of counsel's failure to call a
witness, the petitioner must name the witness, demonstrate that the
witness was available to testify and would have done so, set out the
content of the witness's proposed testimony, and show that the
testimony would have been favorable to a particular defense); <u>Evans
v. Cockrell</u>, 285 F.3d 370, 377-78 (5 Cir. 2002)(rejecting uncalled
expert witness claim where petitioner failed to present evidence of
what a scientific expert would have stated). As noted in the
Government's Response [Cv:DE12, pp.15-16], testimony given by agent
Love at trial regarding the nature of the computer and phone system
used to monitor and record calls, preserving the content of any
incoming or outgoing call automatically, and the fact that only Love
had the passcode and access to the voicemail system, demonstrates
steps taken to ensure the integrity and authenticity of the
recordings which were made. (ROA Vol. 3 of 6, 3/17/07 Trial
Transcript at T/213-15). Here, no affidavit or other objective
evidence has been provided to establish that an expert would have

testified that the possible defects alluded to by the movant Muentes [possible alteration of recordings, or that transcriptions may not have accurately portrayed recorded conversations] actually existed. Such a bare and conclusory allegation by the movant, without record support, must fail. See Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962) (presentation of conclusory allegations, unsupported by specifics, is subject to summary dismissal, as are contentions which in the face of the record are wholly incredible); Tejeda v. Dugger, 941 F.2d 1551, 1559 (11 Cir. 1991) (a movant is not entitled to habeas corpus relief when the claims are merely conclusory allegations unsupported by specifics or in the face of the record are wholly incredible).

Second, to the extent that a decision by defense counsel as to whether to retain and call such an expert would be a strategic decision on the part of the attorney, it should not be second-guessed in this proceeding. Thompson v. U.S., 368 Fed.Appx. 930, 935, 2010 WL 850205, at *5 (11 Cir., March 12, 2010)("we will not second guess [counsel's] strategic decision) (citing Chandler v. U.S., 218 F.3d 1305, 1314 (11 Cir. 2000); Dorsey v. Chapman, 262 F.3d 1181, 1186 (11 Cir. 2001)(petitioner failed to establish ineffective assistance on claim of counsel's failure to call expert witness, in that counsel's decision not to do so was not so patently unreasonable a strategic decision that no competent attorney would have chosen the strategy)

In this case, the Movant Muentes has not shown that there is a reasonable probability that the alleged failure to call an unidentified expert in his case, as alleged, would have altered the outcome of his trial. See United States v. Arnulfo-Sanchez, 219 Fed. Appx. 796, 798, 2007 WL 756439, at *1 (10 Cir., March 14, 2007) (citing Strickland, supra, 466 U.S. at 688). Here, in Muentes' case, the tape recordings of the conversations, from which transcriptions were made, were not the sole evidence of what Muentes said to the UC agent. The UC agent [Richard Love] also testified at trial as to

9

the content of the conversations, and what was said. (See Record on Appeal: Vol. 3 of 6, Trial Transcript from 3/17/2007 at T/205 et seq. [direct examination]; and Vol. 4 of 6, Trial Transcript from 3/18/2007 at T/296-315 [continued direct examination], 315-357 [cross-examination], 357-364 [redirect] and 364-68 [re-cross]). Moreover, there was other independent evidence, which when considered along with testimony of witnesses including that of Agent Love, was overwhelming with regard to Muentes' intent to travel to Costa Rica for the intended purpose of engaging in sex with an underage prostitute or prostitutes. This included evidence that Muentes had made arrangements for the trip and to obtain the services in question, in part, by E-mail, that he had made payments for travel, accommodations, and for the services of an escort or escorts of minor age, for purposes of sex, in Costa Rica. The evidence also showed that Muentes traveled from Palm Beach County to Miami International Airport in Miami-Dade County, and was in the process of boarding an American Airlines flight to Costa Rica, and was then arrested and was found to have in his possession a U.S. Passport, cash, a letter of introduction to the purported Costa Rican "pimp" Jorge, and copies of e-mails to/from undercover agents relating to the arrangements he [Muentes] had made to travel to Costa Rica for the purpose of obtaining sexual services of under age prostitutes.

Because Muentes cannot show that he was prejudiced by the alleged failure of his attorney to hire an expert to challenge recordings of conversations and transcriptions thereof, this first claim of ineffective assistance fails.

### Ground 2

Muentes contends that his attorney failed to argue an entrapment defense in a motion for judgment of acquittal.

While an entrapment defense is designed to reach conduct that constitutes "the manufacturing of crime by law enforcement officials and their agents," Lopez v. United States, 373 U.S. 427 (1963), a

successful entrapment defense requires two elements: 1) government inducement of the crime, and 2) lack of predisposition of the defendant. United States v. Demarest, 570 F.3d 1232, 1240 (11 Cir. 2009)(citing United States v. Brown, 43 F.3d 618, 623 (11 Cir. 1995). The defendant bears the burden of offering proof of inducement [an element of "persuasion or mild coercion"], Demarest, supra, 570 F.3d at 1240; United States v. Ryan, 289 F.3d 1339, 1343 (11 Cir. 2002); Brown, supra, 43 F.3d at 623. Evidence that a defendant "had not favorably received the government plan, and the government had to push him on it, or that several attempts at setting up an illicit deal had failed and at least on one occasion he had directly refused to participate" could support required showing of persuasion or mild coercion. Brown, supra, at 623. Evidence of the ready commission of a crime by a defendant, however, suffices to defeat a claim of entrapment. See Demarest, supra at 1240-41 (noting that the jury, having heard the defendant's testimony and the government's evidence, was entitled to find that the defendant was predisposed to commit the crime). In this case, the evidence showed that Muentes' arm was not twisted. Although he became ensnared in a government undercover operation, it was Muentes who first initiated contact; and he followed up by making telephone and e-mail contacts with agent Love to obtain information and details, and to make arrangements for the travel to Costa Rica and sexual services of minor prostitutes there. When Muentes made clear his interest in escort services as part of the package, Love made clear that an age range of escorts was available, and it was Muentes himself who selected the age range, stating more than once that he wanted girls who were very young, i.e. under age, even when he was told that adult aged escorts were available.

Where there was such overwhelming evidence showing Muentes' predisposition, an essential element [the absence of which would have to be demonstrated for a successful entrapment defense], it cannot be said that failure of counsel to move for a judgment of acquittal, based on entrapment, amounted to ineffective assistance.

The decision to not include such an argument in a motion for judgment of acquittal would be a matter of strategy, for which the courts are reticent to find attorneys ineffective. See Thompson v. U.S., supra (counsel's strategic decisions are not second guessed); Chandler v. U.S., supra (same).

### Ground 3

In ground 3, Muentes argues that his appellate attorney failed to attack the constitutionality of the 10-year minimum mandatory sentence, as applied in his case. This claim of ineffective assistance of appellate counsel is without merit.

In fact, appellate counsel did raise as issue 3 in Muentes' direct appeal, a claim that the trial court had abused its discretion when it denied Muentes' motion to inform the jury of the statutory minimum mandatory sentence for count 1.

Muentes' claim in his §2255 motion [that counsel did not raise a claim that as applied to him, the 10-year sentence mandated by §2422(b) is unconstitutional] is vague, and insufficient to state a claim. Muentes in ground 3 of the §2255 motion simply argues, in conclusory fashion, that counsel's choice not to raise such an issue on appeal was "not the result of reasoned decisions based on strategic or tactical choices." He articulates no basis on which counsel could have argued that the 10-year term is unconstitutional.

Courts of other circuits have held that the 10-year statutorily mandated sentence for a §2422(b) violation is not grossly disproportionate to the crime of attempting to entice a minor to engage in a criminal sexual act, and does not violate the fifth and Eighth Amendments. See United States v. Butters, No. 07-3172, 267 Fed.Appx. 773, 778, 2008 WL 552483, at *4 (10 Cir. 2008); United States v. Nagel, 559 F.3d 756, 762-65 (7 Cir.2009)(affirming 10-year mandatory minimum sentence under §2422(b); and in doing so, reviewing legislative history underlying changes [increase] of penalties under the

statute, holding that the 10-year mandatory minimum without availa-bility of safety valve relief under 18 U.S.C. §3553(f) was not violative of the Fifth Amendment and Equal Protection Clause; and that movant Nagel's facial and as applied Eighth Amendment challenges with regard to his 10-year mandatory minimum sentence imposed under §2422(b) failed).

Under the circumstances, Muentes' claim of ineffective assis-tance of appellate counsel, as framed in ground 3, provides no basis for a finding of ineffective assistance under <u>Strickland</u>, and its progeny.

### Ground 4

Muentes claims that his not guilty plea, which resulted in his going to trial, was a product of counsel's ineffective assistance, in violation of his Sixth Amendment rights. In support of this claim, Muentes asserts (at Cv:DE1, p.18, ¶48) that "prior to trial and during the plea process, counsel could have but did not advise Mr. Muentes that he could plead or probably could plead 'nolo contendere' to a 5 year agreement with the government." He further states that "the 5 year plea offer had been made to counsel" and that "[w]hile Mr. Muentes was reluctant to plead 'guilty,' he would have pleaded 'nolo contendere' to the charge if the option had been explained to him." It is further noted that (at Cv:DE15) Muentes has included a "Declaration" stating: "counsel led me to believe that a five year plea agreement was available at one point but that it required a plea of 'guilty'." (<u>Id.</u>, ¶2). He further states: "I was never advised that I could have potentially pleaded nolo contendere in exchange for the five year offer from the government" (<u>Id</u>. ¶3), and that "[h]ad a plea to five years incarceration been available in exchange for a plea of nolo contendere, I would have accepted the offer and pleaded nolo contendere to the charges." (<u>Id.</u>, ¶4).

While, under appropriate circumstances, counsel may be deemed ineffective under <u>Strickland</u> for not giving proper advice during the

plea process, a petitioner/movant must demonstrate a reasonable probability that, but for counsel's alleged errors, he would have accepted a plea offer. See Diaz v. United States, 930 F.2d 832, 835 (11 Cir.1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir.1991).

In reviewing claims of ineffective assistance of counsel with respect to guilty pleas, the United States Supreme Court has applied the "objective standard of reasonableness" by considering whether counsel's representation was "within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56-57 (1985)(applying Strickland requirements to review for ineffective assistance of counsel with respect to guilty pleas (citations omitted)). As for the prejudice prong, the Court held that the inquiry focused on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. As with other claims of ineffective assistance, a defendant claiming that counsel performed ineffectively in connection with a decision to reject a plea offer must demonstrate that he suffered prejudice to prevail. Turner v. Tennessee, 858 F.2d 1201, 1206 (6 Cir. 1988). As noted, supra, a petitioner seeking to establish prejudice must prove there was reasonable probability that absent counsel's error he would have accepted a plea offer. Diaz, 930 F.2d at 835; Jones v. Wood, 114 F.3d 1002 (9 Cir. 1997), and cases cited at 1012.

A petitioner's/movant's conclusory "after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." See Diaz, 930 F.2d at 835; see also Coulter v. Herring, 60 F.3d 1499, 1504 (11 Cir. 1995) (though Coulter evidenced, through his counteroffer to the state, a willingness to enter into a plea agreement, he offered no further proof to show that he would have accepted the state's plea offer of life without parole absent his lawyers' alleged errors; therefore, Coulter failed to establish any prejudice stemming from counsel's

14

alleged deficient performance); <u>Johnson v. Duckworth</u>, 793 F.2d 898, 902 n. 3 (7 Cir. 1986).

In this §2255 proceeding, as discussed below, Muentes fails to establish prejudice arising from counsel's alleged deficiency. First, his allegations regarding this claim are equivocal and inconsistent; and moreover, in light of facts of record concerning applicability of a 10 minimum mandatory sentence to his case, his claim of not being told that he could possibly plead to the charges and receive a 5 year sentence is wholly incredible. Accordingly, his Declaration is self-serving, is belied by the record, and should be disregarded.

Muentes on one hand faults counsel for not telling him that he <u>could plead</u> to a 5-year agreement, and on the other hand for not telling him that he <u>could *probably* plead</u> nolo contendere for a 5 year term.  In his Declaration he says that counsel only "<u>led [him] to believe</u>" that a 5-year plea agreement was available. In the Declaration he further states that he was not told that he "<u>could *potentially* have pleaded</u> nolo contendere in exchange for the five year offer from the government," and then adds that "***had a plea to 5 years been available*** in exchange for a plea of nolo contendere, I would have accepted the offer and pleaded nolo contendere to the ***charges***." [Emphases added]. This does not indicate that a firm offer of 5-years incarceration was made by the government. The record belies the Movant Muentes' assertion that such an offer was or could have been tendered, and that he would have plead nolo contendere to the charges lodged against him in return for a 5-year term.

The government in its response states that no such offer was ever tendered. Obviously, if an offer is not tendered, there can be no ineffective assistance by an attorney for failing to convey an offer to his client.

Indeed, a year before the Movant Muentes committed the offenses of which he was convicted in this case, the mandatory minimum sentence for a §2422(b) violation was 5 years; but prior to Muentes' commission of the offenses charged, the statute was amended, and the 5 year minimum mandatory was replaced by the 10 year mandatory minimum sentence that applies in Muentes' case.[1]

In this case, the government/Respondent correctly observes that it is an impossibility for Muentes to have been offered a 5-year deal for pleading guilty or nolo contendere to the charges (Counts 1 and 2), because on Count 1, alone, the government and court were bound statutorily to a 10 year minimum mandatory. Where the safety valve does not apply to a §2422(b) violation, there could have been no plea deal for a sentence below that statutory 10-year mandatory minimum; and accordingly, there could be no prejudice to Muentes for a failure of his attorney to urge him to plead guilty to the charges lodged against him under §2422(b) and §2423(b) and (e), in return for a 5-year sentence, where such a sentence could not have been offered and could not have been imposed.

On ground 4 of is motion, Muentes therefore is entitled to no relief.

### Ground 5

In Ground 5 of the §2255 Motion Muentes contends that a cumulative effect of multiple errors by his attorneys at all stages

---

[1]       As discussed by the Seventh Circuit, in Nagel, supra, 559 F.3d at 760-61, and footnote 3, in 1998, the Joint Explanatory Statement of the Committee of Conference for The Protection of Children from Sexual Predators Act of 1998 (the "PROTECT Act"), Pub.L. No. 105-314 § 203(a)(1), 112 Stat. 2974 (1998), evinced a congressional recognition of the seriousness of attempted sexual enticement of a minor. See  H.R.Rep. No. 108-66, at 51 (2003) (Conf.Rep.), as reprinted in 2003 U.S.C.C.A.N. 683, 685.  The PROTECT Act changed the sentence for a violation of  2422(b) from a maximum of fifteen years imprisonment to a mandatory minimum of five years and a maximum of thirty years. Then, on July 27, 2006, Congress passed the Adam Walsh Child Protection and Safety Act of 2006 (Adam Walsh Act), Pub.L. No. 109-248,  203, 120 Stat. 587, 613 (2006), amending 2422(b) to include a mandatory minimum of ten years imprisonment and a maximum of life.

of his case (pretrial, trial, and appeal), which he contends amounted to Sixth Amendment violations, rendered his conviction and sentences unlawful. The alleged acts of ineffective assistance which together comprise Ground 5, include 7 sub-claims (listed below as Grounds 5 "a" through "f," some of which overlap with claims raised in Grounds 1-4, <u>supra</u>.

### Sub-claim 5 "a"
### (from Cv:DE1, pp.20-21, ¶63)

Muentes, here, again complains, as he did in Ground 4, that he was not properly advised about pleading guilty to the offenses charged against him, in return for a 5-year sentence. Muentes, however, faced a 10-year minimum mandatory whether convicted at trial, or pursuant to a plea; and as discussed the claim is without merit.

### Sub-claim 5 "b"
### (from Cv:DE1, p.21, ¶64)

Muentes here claims that his trial attorney was ineffective for failing to move for dismissal of the indictment. He also contends that defense counsel was ineffective for failing to object to unlawful admission of evidence against him. These claims fail for the following reasons.

First, with regard to the initial assertion, Counsel did file a motion (<u>See</u> Cr:DE22) and a second motion (<u>See</u> Cr:DE45) for dismissal of Count 2 of the indictment.

Second, Muentes' allegations in Subclaim 5 "b" are vague, and without specifics as to any grounds/facts on which counsel should have based a motion for dismissal of the indictment, or an objection to evidence. His Traverse (Cv:DE13) does not add specificity to the claims.  Such claims asserted in a §2255 motion may be dismissed without a hearing if they are affirmatively contradicted by the record, patently frivolous, based upon unsupported generalizations, or inherently incredible. <u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. 63,

73-74 (1977); <u>United States v. Laetividal-Gonzalez</u>, 939 F.2d 1455, 1465 (11 Cir. 1991); <u>Humphrey v. United States</u>, 888 F.2d 1546 (11 Cir. 1989); <u>Holmes v. United States</u>, 876 F.2d 1545,1553 (11 Cir. 1989); <u>Lynn v. United States</u>, 365 F.3d 1225, 1238 (11 Cir. 2004). Based on that standard, it is apparent that Muentes' bare and conclusory allegations, that are lacking in record support or factual specificity, should be summarily dismissed, and that he is not entitled to any relief based on this sub-claim.

### Sub-claim 5 "c"
**(from Cv:DE1, p.21, ¶65)**

This sub-claim asserting, generally, counsel's failure to investigate and present exculpatory evidence, and failure to object to evidence that was offered, again lacks specificity, a defect which the Traverse does not cure, and as such, this claim which is based on conclusory allegations, unsupported by facts, is subject to dismissal without a hearing. <u>See</u> <u>Blackledge</u>, <u>Laetividal-Gonzalez</u>, <u>Humphrey</u>, <u>Holmes</u>, and <u>Lynn</u>, <u>supra</u>.

### Sub-claim 5 "d"
**(from Cv:DE1, p.21, ¶66)**

Muentes' contentions [that his attorney failed to submit appropriate jury instructions, and that counsel did not object to others that were allegedly insufficient] fail, first, because they are conclusory. Muentes's motion and traverse do not identify what instructions were not submitted by counsel, and what instructions given were allegedly insufficient and not objected to. As such, the claim fails because it is unsupported and conclusory. <u>Blackledge</u>, <u>Laetividal-Gonzalez</u>, <u>Humphrey</u>, <u>Holmes</u>, and <u>Lynn</u>, <u>supra</u>.

Moreover, as discussed in the government's Response (Cv:DE12 at pp.21-22), and reflected in the record of Muentes' criminal case (Cr:DE43, pp.1-18), defense counsel did submit, in a joint filing with the government, comprehensive proposed jury instructions for

the Court's consideration. As explained at the beginning of the document (footnote 1), the parties' objections were registered in footnotes inserted further on in the proposed jury instructions. Defense counsel, by virtue of his joint filing, did offer instructions; and examination of the document reveals that defense counsel requested the giving of certain alternative instructions if Muentes chose to testify at trial (see footnotes 2 and 6), and did lodge objections to the giving of certain pattern instructions or instructions requested by the government. For example, defense counsel sought to add to Instruction Eight an additional element of proof for the government to meet with regard to the §2422(b) offense (see Cr:DE43, p.10, fn.10), and when the government sought to add an instruction which would define the telephone system as a facility of interstate commerce (required as part of its burden of proof under one of the elements), defense counsel expressly objected to its inclusion (see Cr:DE43, pp.10-11, fn.11). In addition, defense counsel objected to the government's request for inclusion of an instruction that punishment is the responsibility of the court (an objection which was consistent with an ongoing effort by the defense for permission [as sought in the defense Motion *In Limine* Cr:DE23] to inform the jury that Count 1 carried a mandatory minimum 10-year sentence (see Cr:DE43, p.15, fn.17).

Muentes makes an additional assertion in this sub-claim. This is that counsel allegedly failed to object to improper argument by the prosecution, and to request curative instructions. The allegation is conclusory, and refers to no specific instances of misconduct by the government or error by defense counsel. This portion of the sub-claim is therefore subject to dismissal without further consideration. See Blackledge, Laetividal-Gonzalez, Humphrey, Holmes, and Lynn, supra.

As such, on sub-claim 5 "d," the §2255 motion should be denied.

## Sub-claim 5 "e"
### (from Cv:DE1, p.21, ¶67)

Here, Muentes contends that his attorney was ineffective, at sentencing, for failing to present evidence, or object to false, unreliable or inadmissible evidence.  This claim is without merit. As correctly observed by the government in its Response (Cv:DE12, p.22), and as demonstrated by the PSI, the sentencing transcript (Cr:DE89, ROA Vol. 6 of 6), the 2007 U.S. Sentencing Guidelines Manual, and provisions of the United States Code pertaining to the offenses on which Muentes was charged and convicted, Muentes' sentences were determined by statute. Although his advisory guidelines sentence scored out at 78-97 months, on Count 1 a guidelines sentence was not possible because the safety valve did not apply, and he faced a Mandatory Minimum 10-year sentence and possible life sentence for the §2422(b) conviction. On Count 2 [violation of §§2423(b) and (e)] he faced a statutory term of 0 to 30 years imprisonment. As previously discussed, rather than potential higher sentences, Muentes received the minimum 10-year sentence possible on Count 1, and a 78 month sentence, at the bottom of the guidelines, for his conviction on Count 2. This was due, in part to counsel's advocacy on his behalf. The only possible argument that counsel could make to attack  imposition of the 10-year minimum mandatory sentence was to argue that the statute was unconstitutional. Counsel did make that argument, and the Court rejected it.

Under these circumstances, counsel cannot be said to have been ineffective at sentencing, and sub-claim 5 "e" fails.

## Sub-claim 5 "f"
### (from Cv:DE1, p.22, ¶68)

In this sub-claim, Muentes asserts generally, without any specifics, that counsel failed to present the strongest issues

20

available as arguments on direct appeal, and failed to preserve viable issues for collateral review. The claim is subject to dismissal, as conclusory. <u>Blackledge</u>, <u>Laetividal-Gonzalez</u>, <u>Humphrey</u>, <u>Holmes</u>, and <u>Lynn</u>, <u>supra</u>. A claim that a defendant's appellate attorney was ineffective, which is vague, conclusory, and insufficiently plead, is insufficient as a matter of law to raise a claim of ineffective assistance of counsel. <u>Morris v. Secretary, Dept. of Corrections</u>, No. 8:06-CV-1289-T-27TGW, 2009 WL 3170497, at *34 (M.D.Fla., Sept. 30, 2009)(citing <u>Chandler v. Moore</u>, 240 F.3d 907, 917-18 (11 Cir. 2001)(counsel not ineffective for failure to raise a non-meritorious issue)).

### Sub-claim 5 "g"
#### (from Cv:DE1, p.22, ¶69)

This subclaim, that counsel representing him at trail and on appeal were laboring under actual conflicts of interest, which are not identified, is subject to dismissal, as conclusory. <u>Blackledge</u>, <u>Laetividal-Gonzalez</u>, <u>Humphrey</u>, <u>Holmes</u>, and <u>Lynn</u>, <u>supra</u>. <u>See</u>: <u>Hollis v. Smith</u>, 134 Fed.Appx. 364, at *3 (11 Cir., June 10, 2005)(a defendant who has raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance;" petitioner's "claims about conflict of interest amount to little more than his own conclusory allegations, and there is no evidence that any alleged violation resulted in an actual conflict;" and, as such, petitioner's "mere speculation about a possible conflict is not sufficient to establish ineffective assistance of counsel") (citing <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 349 (1980); <u>Herring v. Sec. Dep't of Corrs.</u>, 397 F.3d 1338, 1357 (11 Cir. 2005)). <u>See also</u>: <u>Martin v. Thaller</u>, No. 7:07-Cv-128-O, 2010 WL 645304, at *7 (N.D.Tex., Feb. 24, 2010)(denying §2254 relief on conflict of interest claim, because other than petitioner's own conclusory allegation, there was nothing to demonstrate that counsel was operating under a conflict of interest as alleged; and having failed to show that counsel had a conflict, and having failed to

demonstrate that, but for the alleged ineffectiveness of counsel, the result of his trial would have been different, the petitioner could not prevail on his ineffective assistance claim, having failed to satisfy either prong of the <u>Strickland</u> test).

As such, Muentes is entitled to no relief on this sub-claim.

### <u>Ground 6</u>
### (from Cv:DE1 p.9, Ground Six, and P.10, ¶(a))

Finally, Muentes asserts in general fashion, that his "Conviction And Sentence Are Violative Of His Right To Freedom Of Speech And To Petition, His Right To Be Free From Unreasonable Search And Seizure, His Right To Due Process Of Law; And His Rights To Counsel, To Jury Trial, To Confrontation Of Witnesses, To Present A Defense, And To Compulsory Process, And His Right To Be Free From Cruel And Unusual Punishment Under The Constitution."

As with other of his claims which were wholly conclusory, this boilerplate "kitchen sink" claim, which is devoid of specifics, or support on the record, is subject to summary denial.

### III  <u>CONCLUSION</u>

For the above stated reasons, it is recommended: 1) that the Movant Muentes' Motion to Vacate (Cv:DE1), filed pursuant to 28 U.S.C. §2255, be DENIED in its entirety, as to all claims; and 2) that this case be closed.

Objections to this report may be filed with the District Judge within Fourteen days of receipt of a copy of the Report.

Dated: October <u>28</u><sup>th,</sup>  2010.

UNITED STATES DISTRICT JUDGE

cc:  Jorge M. Muentes, *Pro Se*
     Reg. No. 80039-004
     FCC - Coleman (Low A-4)
     P.O. Box 1031
     Coleman, FL 33521

     Peter A. Forand, AUSA
     United States Attorney's Office
     99 N.E. 4th Street
     Miami, FL 33132

     The Honorable James I. Cohn,
     United States District Judge